NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0336n.06

No. 08-4732

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 02, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| IVEY J. MAYBOU, | ) | District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before:       BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

PER CURIAM.   Ivy Joe Maybou was a sheriff's deputy and prison guard in Mahoning County, Ohio.  Federal agents arrested Maybou after he purchased cocaine for one of the prisoners under his supervision.  Pursuant to a plea agreement, Maybou pleaded guilty to one count of carrying a firearm during a drug trafficking offense.  The district court imposed an eighty-four-month sentence, which included a twenty-four-month upward variance.  Maybou now appeals his sentence, claiming that it is substantively unreasonable.  Because we conclude that the district court did not abuse its discretion by imposing an eighty-four-month sentence, we affirm the judgment of the district court.

**I**

Maybou became a Mahoning County sheriff's deputy in July 2007, after working for six years as a part-time police officer in Bazetta Township.  The sheriff's department assigned Maybou

to serve as a guard at the Mahoning County Justice Center. Maybou soon developed a friendship with an inmate who "he thought could keep him informed as to what's going on . . . ." Maybou began to perform small favors for this inmate, such as bringing the inmate tobacco and allowing the inmate to use Maybou's cell phone.

In early April 2008, the inmate offered to pay Maybou $2000 if he would bring the inmate drugs. Maybou agreed. Unfortunately for Maybou, the inmate was an FBI informant who promptly contacted the FBI and reported that Maybou had agreed to bring him drugs.

The FBI provided the inmate with a cell phone number to give to Maybou. Maybou called the number several times, leaving voicemail messages, and ultimately arranged to meet an undercover FBI agent to pick up the "package." At the agreed-upon time, Maybou met with the FBI agent, who provided Maybou with $2000 and one ounce of cocaine.

FBI agents arrested Maybou as he exited the undercover agent's vehicle. A search of Maybou's person revealed that Maybou was carrying a loaded Glock 23, .40-caliber handgun. His employer did not authorize him to carry the weapon at that time.

A federal grand jury returned a two-count indictment against Maybou for possession with intent to distribute cocaine (count one) and carrying a firearm during a drug trafficking offense (count two). Maybou and the Government entered into a Rule 11 plea agreement, in which Maybou agreed to plead guilty to the firearm count and the Government agreed to dismiss the possession count.

Pursuant to the plea agreement, Maybou pleaded guilty to carrying a firearm during a drug trafficking offense. The Presentence Investigation Report (PSR) indicated that, under United States

Sentencing Guideline 2K2.4(b), the Guidelines sentence for carrying a firearm during a drug trafficking offense was "the minimum term of imprisonment required by statute" (quoting U.S.S.G. §2K2.4(b)). The relevant statute, 18 U.S.C. § 924(c), provided for a five-year mandatory minimum sentence, so Maybou's Guidelines range was sixty months.

At the sentencing hearing, the district court accepted the PSR's findings and found that Maybou's Guidelines range was sixty months. The court determined, however, that a sixty-month sentence was not adequate. In the court's view, the peculiar trust that society places in police officers and prison guards, and the unique danger that such individuals pose when they choose to use their positions to pursue illegal ends, necessitated a higher sentence. This led the court to vary upward twenty-four months from the Guidelines range, resulting in an eighty-four-month sentence.

Maybou filed a timely appeal. Although his plea agreement contains an appeal-waiver provision, Maybou specifically reserved the right to appeal an above-Guidelines sentence.

**II**

On appeal, Maybou challenges the substantive reasonableness of his sentence.[1] This court reviews the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on

---

[1]Because Maybou does not argue that his sentence is procedurally unreasonable, we need only review his sentence for substantive reasonableness. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008).

impermissible factors, fails to consider pertinent 18 U.S.C. § 3553(a) factors, or gives unreasonable weight to any pertinent factor. *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008).

For sentences that fall within the Guidelines range, the court applies a rebuttable presumption of substantive reasonableness. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). However, the court does not apply a presumption of unreasonableness when the sentence is outside the Guidelines range. *Vowell*, 516 F.3d at 509. Rather, although the court "may consider the extent of the deviation" from the Guidelines range, the court "must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

In this case, the district court methodically discussed each § 3553(a) factor, analyzed how those factors applied to Maybou's case, and concluded that they justified a twenty-four-month upward variance. Maybou asserts that the district court nevertheless acted unreasonably because (1) the variance exceeded the normal U.S.S.G. §3B1.3 enhancement for an abuse of a position of trust,[2] Appellant's Brief at 16, and (2) the district court "gave an inordinate amount of emphasis to" Maybou's position as a prison guard and ignored his clean criminal record, the needs of his family, and "the relative recency of his post." *Id.* at 16-17.

We find neither of Maybou's arguments persuasive. First, this case did not involve the U.S.S.G §3B1.3 enhancement, and Maybou's actions were more egregious than the typical §3B1.3 case. By agreeing to buy illegal narcotics for a prisoner, Maybou violated not only the trust that the

---

[2]U.S.S.G. §2K2.4(b) rendered the U.S.S.G. §3B1.3 enhancement inapplicable to Maybou.

public places in police officers to uphold the law, but also the trust that the public places in prison guards to maintain prison security. *See United States v. Siciliano*, 953 F.2d 939, 942-43 (5th Cir. 1992) (finding an upward departure in addition to the §3B1.3 enhancement reasonable where "the defendant [was] more than merely a law enforcement officer who engage[d] in a prohibited transaction . . ., he [was] also a guard who engaged in a prohibited transaction while charged with maintaining prison security"); *see also United States v. Gilliam*, 315 F.3d 614, 618 (6th Cir. 2003) (noting that the public "places tremendous trust in prison employees that they will not conspire with inmates to violate the law" (citation omitted)); *United States v. Talley*, 194 F.3d 758, 766 (6th Cir. 1999) (finding that a police officer who used his position to pursue criminal ends abused a position of trust); *United States v. Clay*, 320 F. App'x 384, 392 (6th Cir. 2009) (rejecting the argument that a "first-year correctional officer" did not occupy a position of trust).

Second, contrary to Maybou's contentions, the district court explicitly recognized Maybou's criminal record, his short tenure with the sheriff's department, and the needs of Maybou's family. The court concluded, however, that those factors did not outweigh the need for an above-guidelines sentence, which would reflect the seriousness of Maybou's offense and deter similar conduct by other police officers. Given the unique danger created by police officers' ability to obscure their criminal conduct behind the veil of police authority, and the threat posed to prison safety and discipline by the introduction of illegal narcotics, this conclusion was not unreasonable. *Cf. United States v. Arroyo*, 546 F.3d 54, 57 (1st Cir. 2008) (affirming an upward departure where the district court found that a police officer set a very bad example by buying and making available illegal drugs). Moreover, to the extent that Maybou suggests "that the district court should have balanced

the § 3553(a) factors differently, it is 'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.'" *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

Accordingly, the district court did not abuse its discretion when it determined that Maybou should receive an eighty-four-month sentence.

**III**

For the foregoing reasons, we AFFIRM the judgment of the district court.